Nott, Ch. J.,
delivered the opinion of the court: •
This case has been referred by the Secretary of the Treasury under the Bowman Act (Act 3d March, 1883, 22 Stat. L., p. 485, sec. 2) for the determination of certain questions of statutory construction which have been thus formulated by the Assistant Comptroller of the Treasury:
“ 1. Is the act of May 26, 1900, relating to officers of the General Staff, general and permanent legislation in the same sense that the act of January 12, 1899, has been held by the court to be permanent legislation, applicable as well to' the officers who were appointed under the acts of March 2, 1899, and February 2, 1901, as to those who were appointed under the act of April 22, 1898 (30 Stat., 361), or is the said act of May 26 entirely retrospective in its operations and limited only to those who served in the war with Spain and were discharged at or soon after the close thereof?
“ 2. If it be held by the court that the act of May 26,T900, is applicable to the case of claimant and that he is entitled to extra pay, then it is desired to know whether he is entitled, upon the record in his case, to the full two months’ extra pay (served beyond the limits of the United States) or only to a pro rata thereof.”
The Act 12th January, 1899 (30 Stat. L., p. 184), was prospective and to effect two purposes: Its first purpose was to prohibit in the future the granting of leaves of absence, or furloughs to officers and enlisted men of volunteers at the termination of a war, as had been done by the War Department at the close of the Spanish war; its second was to grant thereafter, to officers and enlisted men belonging to companies and regiments of volunteers, extra pay when mustered out in lieu of leaves of absence or furloughs. The statute is emphatic in saying “ all officers and enlisted men hereafter mustered out;” but it is obscure in the phrase “ belonging to volunteer organizations.”
. While two things were provided for, two things were omitted. The statute did not extend to officers or enlisted men who had been theretofore mustered out, and it did not *242 in express terms extend, to staff officers of volunteers who had been or who might thereafter be mustered out.
The Act 26th May, 1900 (31 Stat., L., p. 217), was intended to supply these omissions. It does so, not by new enactments, but by extending the act 12th January, 1899, first, to officers of the General Staff, and, second, to officers and enlisted men of “ volunteer organizations ” who having-served “ during the war with Spain ” had been discharged without furlough. This latter provision is limited to those who served “ during the war with Spain.” The first one is not limited to the war with Spain or to any other war, but is necessarily prospective, and, in the terms of the original act, 12th January, 1899, applicable to all such officers “ hereafter mustered out of the service.” That is to say, the extension of an earlier statute by a later one, in the absence of words of limitation, must be as prospective and as permanent as the statute which is extended. This construction is not only a necessary one, but is in perfect harmony with the policy of the United States in such cases. That policy was well and legislatively expressed by the Act 19th July, 1848 (9 Stat. L., p. 248, sec. 5). The enactment is a statute comprehensive, clear, compact, which for thirty years was administered b}*- the War and Treasury Departments “ undisturbed bjr legislation and unquestioned by judicial decisions.” (Emory’s Case, 19 C. Cls. R., 254, 261.) It is in these words:
“ That the officers, noncommissioned officers, musicians, and privates engaged in the military service of the United. States in the Avar with Mexico, and who served out the term of their engagement, or have been or may be honorably discharged — and first to the widows, second to the children, third to the parents, and fourth to the brothers and sisters of such Avho have been killed in battle, or who died in the service, or who, having been honorably discharged, have since died, or may hereafter die, without receiving the three months’ pay herein provided for — shall be entitled to receive three months’ extra pay: Provided, That this provision of the fifth section shall only apply to those who have been in actual service during the Avar.”
When construing it this court said:
“ The Avar with Mexico had been prosecuted largely by volunteer regiments enlisted specially for that service. Their *243 military employment was not one in which even a thrifty person could lay up money, and Congress was brought face to face with the fact that these men were about to the thrown on their own resources, and would soon be compelled to seek new livelihoods in civil life.”
And the Supreme Court, when construing a similar statute (Act 3d March, 1865, 13 Stat. L., p. 497, sec. 4), said:
“ The object which Congress had in view was to provide for the loss to which the volunteer officers, when discharged from the military service, were exposed for the want of employment before they would be able to resume, to any considerable extent, their accustomed avocations in civil life. Most of the officers of that class left civil occupations to engage, for a period of uncertain duration, in the military service of the country, and the obvious purpose of that provision was that when they came to be discharged they should not be left without any compensation during the period which, in all probability, would elapse before they would be able to establish themselves in remunerative business pursuits.” (Merrill v. United States, 9 Wall. R., 614.)
A doubt has been thrown upon this construction by the language of this court in the case of Daggett 139 C. Cls. R., 205), where it was said:
“ The purpose of the statute was not to provide general or permanent legislation, but to place all staff officers who had not received leave of absence and who had been discharged from the service in the manner indicated by the orders of the War Department upon substantially the same footing as those provided for by other legislation.”
This point was not involved in the Daggett case; and it must be acknowledged that this language was inadvertently used with regard to the first provision of the act 26th May, 1900, the one now under-consideration, Avhen it was properly applicable only to the second provision, where the extension of the act 12th January is limited to soldiers who had served “ during the war with Spain.” The construction given to the two statutes by the Assistant Comptroller of the Treasury in the case of William Duffield Bell (10 Comp. Decisions, p. 677) was unquestionably the correct one.
As to the amount which the claimant should recover:
He served “ beyond the limits of the United States,” and therefore, under the act 12th January, 1899, is primarily entitled to “ two months’ extra pay on muster out.” *244 But on the 26th of November, 1902, an order was issued by the War Department honorably discharging him from the service “ to take effect December 31, 1902.” At that time he was on the high seas returning from Manila. On the 28th of November he arrived at San Francisco, and on the 5th of December at his home in Washington. There then remained twenty-six days of December, during which he ivas apparently on pay, but not on duty.
The first provision of the act 26th May is very obscurely expressed, but still must have been intended to impose a certain limitation upon the benefits conferred, which limitation was that the officers of the general staff to be entitled to extra pay must not have received waiting-orders pay. It is true that the words “ who have not received waiting-orders pay prior to discharge,” uttered on the 26th of May, 1900, do not grammatically apply to officers who might receive waiting-orders pay three years after this enactment. But again it must be said that it has never been the purpose of Congress to discriminate between officers- of volunteers when discharged from the service, and ill order that there may be no technical discrimination we must read into this obscure and ungrammatical language of the statute the words “ at the time of their discharge,” so that the reading shall be that the act 12th January, 1899, “ shall extend to all volunteer officers of the general staff who [at the time of their discharge] have not received waiting-orders pay.” Accordingly, it must be held that the claimant will be entitled to be paid only extra pay for one month and five days, to wit, $194.45, and the case will be so certified to the Secretary of the Treasury.